Filed 3/26/25  Bush v. PHH Mortgage Corp. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SHANNA BUSH, Plaintiff and Appellant, v. PHH MORTGAGE CORPORATION, Defendant and Respondent. | D083411 (Super. Ct. No. CIVSB2204756) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Corey G. Lee, Judge.  Affirmed.

Law Offices of Charles O. Agege and Charles O. Agege for Plaintiff and Appellant.

Wright, Finlay & Zak and Jonathan D. Fink for Defendant and Respondent.

Shanna Bush sued her loan servicer, PHH Mortgage Corporation (PHH), for negligent misrepresentation and wrongful foreclosure in violation of the California Homeowner Bill of Rights (HBOR) (Civ. Code, § 2923.4 et seq.)  PHH brought a motion for summary judgment or, in the alternative, a motion for summary adjudication of issues.  Bush opposed that motion but,

in doing so, failed to address most of PHH's arguments. Indeed, she did not address her wrongful foreclosure claim whatsoever. Thus, not surprisingly, the superior court granted the motion and entered judgment in favor of PHH.

Now on appeal, Bush, for the first time, addresses legal arguments PHH raised below. Specifically, she claims the trial court incorrectly determined that the economic loss rule prohibited her negligent misrepresentation claim. Yet, in making this argument, she fails to address whether, even if we were to agree with her, a triable issue of material fact remains as to the elements of her negligence misrepresentations claim. This omission is fatal to her challenge concerning that cause of action.

Bush's arguments regarding her second cause of action for wrongful foreclosure fare no better. Regarding that claim, the court found that HBOR was preempted by federal law, explicitly noting that Bush did not contest the issue. Now, in somewhat cursory fashion, Bush contends that we should consider her legal argument that HBOR is not preempted. Based on the unique circumstances before us, we decline to exercise our discretion to consider this issue. Bush had the opportunity to address PHH's preemption argument below. Because she did not do so, we believe it would be patently unfair to both PHH and the superior court to consider Bush's preemption issue on appeal in the first instance. As we shall explain *post*, our conclusion is buttressed by Bush's approach to this issue in her briefs.

Finding Bush has either waived her arguments or her contentions lack merit, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Around June 22, 2006, Bush and Julia Ferguson[1] obtained a loan in the amount of $311,350 (Loan) from IndyMac Bank, F.S.B. (IndyMac), a

---

[1] Ferguson is not a party in this matter.

2

federal savings bank, which was secured by a deed of trust recorded against certain residential property (Property) located in Fontana, California. Bush subsequently modified the Loan a total of three times in 2011, 2013, and 2015.

The last of these modifications was entered into between Bush and Ocwen Loan Servicing, LLC (Ocwen). Ocwen was servicing the Loan. PHH is the successor by merger to Ocwen and became the servicer of the Loan.

On February 5, 2020, PHH substituted Western Progressive, LLC (Western) as trustee under the applicable deed of trust. Because the Loan, as modified, had fallen into default, Western recorded a notice of default and election to sell under deed of trust (notice of default) on February 13, 2020. The notice of default indicated that Bush had not made payments under the Loan since April 1, 2019, and was $17,421.90 in arrears. Bush did not bring the Loan current; thus, Western recorded a notice of trustee's sale on February 12, 2021.

Five months later, on July 14, 2021, PHH asked Bush to submit a new application for mortgage assistance. Bush applied for a loan modification, which PHH deemed to be complete on August 8, 2021. On August 18, 2021, after completing its review of her application, PHH informed Bush, in writing, that it denied Bush's request for mortgage assistance. In its denial letter, PHH informed Bush that she had the right to appeal PHH's decision within 30 days. Bush did not appeal that denial. However, Bush does not recall receiving any such letter from PHH.

On August 25, 2021, a PHH representative spoke with Bush and again informed her of the denial.[2]

On September 24, 2021, PHH sent Bush a letter informing her that her account was subject to a COVID-19 Temporary Hardship Forbearance Plan (Covid Plan), which would end soon, that PHH "[did] not have a complete application for permanent mortgage assistance," and that PHH required Bush to submit a complete Mortgage Assistance Application (MAA) along with all supporting documents by October 31, 2021. Three days later, on September 27, 2021, a PHH representative spoke with Bush and informed her that the trustee's sale was set for October 27, 2021. In turn, Bush informed PHH's representative that she was working with "somebody that the state has provided" to bring the Loan current.[3]

Because PHH had given Bush until October 31, 2021 to submit a complete MAA, on October 19, 2021, PHH postponed the pending trustee's sale, and, on October 20, 2021, Western sent Bush a letter informing her that the trustee's sale had been postponed to November 3, 2021. Similar to her approach to other written communications that are in the record, Bush claims that she did not receive the letter from Western.

On October 29, 2021, PHH determined that Bush had not submitted a complete MAA to PHH and, that same day, sent a letter to Bush, advising her that it had not received a complete MAA from her.

---

[2] Bush does not recall the August 25, 2021 call with PHH. Nonetheless, PHH submitted a certified transcript of the August 25 call that shows a PHH representative and Bush discussed the denial of Bush's loan modification application. Bush has not indicated whether she challenged the authenticity of the transcript below. She does not challenge it on appeal.

[3] In support of its motion for summary judgment, PHH submitted a certified transcript of this call as well.

4

Bush did not submit a complete MAA to PHH on or before October 31, 2021. Consequently, on November 1, 2021, PHH closed its loss mitigation file and released the foreclosure hold. Thereafter, on November 3, 2021, the Property was sold at a trustee's sale to third party purchasers for $457,000. At that time, the amount of Bush's outstanding debt was $443,437.43.

PHH did not receive any communications from Bush between September 27, 2021 and December 14, 2021, when, 41 days after the trustee's sale, Bush, together with a Department of Housing and Urban Development counselor, contacted PHH and was told by PHH that the Property had already been sold at a trustee's sale on November 3, 2021.[4] Thereafter, Bush spoke with another PHH representative on the same day. During that call, that second PHH representative, apparently not realizing the Property had been sold at a trustee's sale, informed Bush that PHH could enroll Bush's account back into the Covid Plan, conducted a financial interview of Bush, and submitted the interview to the modification department for review. However, on December 17, 2021, PHH sent Bush a letter informing her that her account did not qualify for any mortgage assistance options because the Property had been sold at a trustee's sale.

On February 7, 2022, Bush sued PHH, alleging causes of action for negligent misrepresentation and violation of HBOR. After the superior court sustained in part PHH's demurrer to the original complaint, Bush filed a first amended complaint. That complaint consisted of the same two causes of action as the original complaint. Regarding the claim for negligent

---

[4] Bush pointed out that PHH did not contact her during that time period. She also alleged that, on December 13, 2021, she found a notice on the door of her home stating that her home had been sold at a trustee's sale on November 3, 2021.

misrepresentation, Bush alleged that on August 1, 2021, she talked with a PHH representative "about a loan modification, that is about rewriting the loan to put missed payments at the end of the new modified loan." Further, Bush averred that the PHH representative told her "that such a modification would eliminate the default and prevent the loss of her home by foreclosure." Bush also claimed that a PHH representative told her that there would be no foreclosure sale while the parties were discussing loan modification. Although Bush alleged she was told that the Loan was subject to the Covid Plan, PHH failed to inform her that if such " 'temporary forbearance' was lifted or expired that . . . PHH . . . would conduct a foreclosure sale without any further notice."

Bush referred to the second cause of action as "wrongful foreclosure based on violations of the Homeowners Bill of Rights." The gravamen of this claim was that PHH allegedly "engaged in 'double tracking' in violation of the" HBOR "by taking actions to advance or facilitate foreclosure while at the same time discussing a loan modification with" Bush.

PHH subsequently moved for summary judgment or, in the alternative, summary adjudication. PHH argued the court should grant its motion for seven separate reasons. First, it asserted that Bush's negligent misrepresentation was barred by the economic loss rule. Second, PHH stated that the negligent misrepresentation claim must fail because PHH did not owe a legal duty to Bush. Third, PHH argued that Bush could not satisfy the elements of the negligent misrepresentation claim. Fourth, it maintained that both the first and second causes of action were meritless because Bush did not offer to bring the Loan current or pay it off. Fifth, PHH argued that HBOR is preempted by the federal Home Owners' Loan Act (12 U.S.C. § 1461) (HOLA). Sixth, as to the second cause of action, PHH contended that

Bush could not establish that the foreclosure sale was illegal, fraudulent, or willfully oppressive. Finally, PHH claimed that Bush could not maintain the second cause of action because she could not show she was prejudiced by the foreclosure sale. Each of these seven arguments was discussed in detail in the memorandum of points and authorities supporting PHH's motion for summary judgment. Also, in support of the motion for summary judgment, PHH submitted a statement of undisputed facts, evidence, declarations, and a request for judicial notice.

In opposing the motion for summary judgment, Bush's memorandum of points and authorities did not address all of PHH's stated grounds for summary judgment. Rather, Bush simply argued that she "ha[d] made allegations to show that there are triable issues concerning negligent misrepresentation." Specifically, regarding a misrepresentation by PHH, Bush asserted the following:

> "Plaintiff Shanna Bush was never informed of the actual foreclosure sale date. Instead, Ms. Bush alleges that she was continually informed that her application was pending prior to November 3, 2021. Although a lender does not have to notify a mortgagor of a continued sale date, this cannot be true when the lender has told the borrower that a sale has been postponed and that they, the borrower, are under review for a modification."

Notably, Bush did not provide any citations to the evidence to support her claim of a disputed material fact.

In further support of her claim that PHH had made a misrepresentation to her, Bush pointed out that PHH had submitted a completed loan modification application on her behalf after the foreclosure sale.

Additionally, Bush asserted that PHH intended to induce her reliance on the misrepresentation, her reliance was justified, and she suffered

7

damages. However, Bush did not address whatsoever PHH's claim that the economic loss rule prohibited the claim for negligent misrepresentation. Moreover, Bush failed to discuss or otherwise argue that her second cause of action should survive the motion for summary judgment.

Bush also responded to PHH's statement of undisputed facts, and submitted her own declaration and evidence in support of the opposition to the motion for summary judgment.

PHH filed a reply and objections to evidence in support of its motion for summary judgment. Specifically, PHH argued that Bush did not oppose the motion for summary adjudication as to the second cause of action; thus, she conceded the validity of that argument. PHH also noted that Bush did not address the argument based on the economic loss rule.

The superior court granted PHH's motion for summary judgment. Regarding the claim for negligent misrepresentation, the court summarized its reasoning as follows:

> "Therefore, Plaintiff's claim fails because a tortious claim is mutually exclusive in contract law under the economic loss rule, and Defendant does not maintain a duty to Plaintiff in tort or statute either. It is possible a cause of action for intentional misrepresentation or grounded in contract might be viable under the facts before the Court, but no such claim is pled."

With respect to the second cause of action, the court noted that Bush did not contest that her claim under HBOR was preempted by HOLA. Accordingly, the court determined the claim was preempted.

The court subsequently entered judgment in favor of PHH.

Bush timely filed a notice of appeal.

8

DISCUSSION

A.      *Standard of Review*

We review the trial court's grant of summary judgment independently. (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1067.) A motion for summary judgment must be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

In conducting our de novo review, we employ the same three-step analysis as the trial court. (*Benson v. Superior Court* (2010) 185 Cal.App.4th 1179, 1185.) "The three steps are (1) identifying the issues framed by the complaint, (2) determining whether the moving party has made an adequate showing that negates the opponent's claim, and (3) determining whether the opposing party has raised a triable issue of fact." (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1124.)

B.      *Bush's Contentions*

Bush claims the superior court erred in granting summary judgment because the economic loss doctrine does not apply to the negligent misrepresentation claim, and HOLA does not preempt her claim under HBOR.

C.      *Negligent Misrepresentation*

Regarding Bush's first cause of action for negligent misrepresentation, the briefs in the instant matter focus on whether the economic loss rule applies to that claim. To this end, PHH emphasizes that Bush did not address the economic loss rule whatsoever below and thus, has waived that issue here. Bush does not dispute that she failed to discuss the economic loss

9

rule in her opposition to the motion for summary judgment, but she urges us to exercise our discretion to consider this legal issue on appeal in the first instance. It is true that we have discretion to consider pure questions of law for the first time on appeal. (*Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1709.) However, we are more inclined to exercise such discretion when there has been a change in decisional law that affects the rights of the parties. (*GreenLake Capital, LLC v. Bingo Investments, LLC* (2010) 185 Cal.App.4th 731, 739, fn. 6.)

Here, there has been no change in the law that would explain why Bush did not address PHH's economic loss rule argument below. To the contrary, in its motion for summary judgment, PHH explicitly argued that Bush's negligent misrepresentation claim was barred by the economic loss rule as set forth in *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905 (*Sheen*).[5] Nonetheless, Bush neither discussed the economic loss rule nor distinguished *Sheen*. Indeed, Bush did not even mention *Sheen* in her opposition. Moreover, there is no explanation in the opening brief why she did not address the economic loss rule below. In circumstances like this, we are hesitant to exercise our discretion to consider a new issue raised on appeal even if that issue is purely legal.

---

[5] As our high court explained, the economic loss "rule itself is deceptively easy to state: In general, there is no recovery in tort for negligently inflicted 'pure economic losses,' meaning financial harm unaccompanied by physical or property damage." (*Sheen, supra*, 12 Cal.5th at p. 922.) The economic loss rule applies, inter alia, where the parties are in contractual privity and the plaintiff's claim arises from the contract (in other words, the claim is not independent of the contract). (*Id*. at p. 923 ["Not all tort claims for monetary losses between contractual parties are barred by the economic loss rule. But such claims are barred when they arise from—or are not independent of—the parties' underlying contracts"].)

Yet, even if we were to consider the economic loss rule and conclude that Bush had the correct argument, she still would have to show that a triable issue of material fact exists as to at least one element of negligent misrepresentation. In her opening brief, she utterly fails in this regard. Bush does not set forth the elements of a negligent misrepresentation cause of action. Nor does she show that a triable issue of material fact exists. Rather, she faults the superior court for failing to determine whether a triable issue of material fact existed after it concluded that the economic loss rule applied. Then she baldly asserts, "The declaration of [Bush] made clear, however, that triable issues of material facts existed and the summary judgment should not have been granted." This is woefully inadequate to satisfy her burden on appeal.

Even on de novo review, "the appellant must frame the issues for us, show us where the superior court erred, and provide us with proper citations to the record and case law." (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913.) Moreover, " ' "[o]n review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.] . . . . 'As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.' [Citation.]" [Citation.]' " (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 379.)

Here, beyond arguing that the superior court erred in concluding that the economic loss rule applied, Bush does no more than to allude to her declaration and say she proved there that a triable issue of material fact

11

exists. She offers no further explanation. She does not provide any citations to authority. She does not apply the law to the facts. Instead, she points to a mere nine pages of a 1216 page record with little explanation and no analysis.6 It is not our role as an appellate court to independently review the record for error and to construct arguments for appellant that would require reversal. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 (*United Grand*).) Without more, Bush's passing reference to her declaration is of no help to her position here.

Bush's failure to address the existence of a triable issue of material fact as to the negligent misrepresentation claim is even more perplexing because PHH specifically mentioned this shortcoming: "Notably, the Opening Brief does not bother to identify what triable issues of fact existed here that were properly presented in the court below, and that would have been sufficient to defeat the MSJ, thus effectively abandoning *that* issue." Thus, at the very least, Bush could have responded to PHH's argument in her reply brief. True, we ordinarily do not consider issues raised for the first time in a reply brief (see *United Grand, supra*, 36 Cal.App.5th at p. 158), but such a discussion combined with Bush's claim in her opening brief that her declaration raised a triable issue of material fact might have been enough for us to consider the issue on the merits. But that is not the case before us. "We are not obliged to make other arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise." (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830–1831, fn. 4; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' arguments for them"].)

---

6 Those nine pages consist of a portion of the opposition to the motion for summary judgment as well as Bush's declaration.

We may and do "disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.) Accordingly, we conclude that Bush has not carried her burden on appeal to show the trial court erred in granting summary adjudication as to the first cause of action.

D.     *Wrongful Foreclosure in Violation of HBOR*

Next, we turn to Bush's second cause of action for wrongful foreclosure in violation of HBOR. Below, PHH argued, among other reasons, that this claim could not survive summary judgment because HOLA preempted HBOR. In opposing the motion for summary judgment, Bush offered no argument regarding her second cause of action whatsoever. Thus, the superior court noted that Bush did "not contest that [her] statutory claim is preempted by" HOLA. Then relying on unpublished federal district court cases, the court concluded that HOLA preempted HBOR.

Here, for the first time, Bush argues that HOLA does not preempt HBOR. She acknowledges that she did not challenge the HOLA preemption argument below but urges us to consider this legal issue on appeal in the first instance. Based on the reasons we discuss *post*, we decline to do so.

"Whether state law is preempted by federal law depends on whether Congress intended that federal law supersede state law." (*Lopez v. World Savings & Loan Assn.* (2003) 105 Cal.App.4th 729, 736; accord, *Peatros v. Bank of America* (2000) 22 Cal.4th 147, 157 ["[w]hether federal law preempts state law is fundamentally a question whether Congress has intended such a result"].) " '[F]ederal regulations have no less pre-emptive effect than federal statutes.' " (*Lopez,* at p. 736; accord, *Jevne v. Superior Court* (2005) 35 Cal.4th 935, 950.)

"Between 1933 and 1989, federal savings and loan associations (also referred to as thrift institutions or thrifts) were regulated under . . . HOLA by the Federal Home Loan Bank Board [the Board]," which "was given 'plenary authority to issue regulations governing' thrift institutions and superseding state law." (*Akopyan v. Wells Fargo Home Mortgage, Inc.* (2013) 215 Cal.App.4th 120, 138 (*Akopyan*); see *Fidelity Federal Savings & Loan Assn. v. de la Cuesta* (1982) 458 U.S. 141, 160, 162 [under HOLA, "Congress gave the Board plenary authority to issue regulations governing federal savings and loans"; HOLA's "statutory language suggests that Congress expressly contemplated, and approved, the Board's promulgation of regulations superseding state law"].)  The Office of Thrift Supervision (OTS) replaced the Board in 1989 and "was given the same plenary power to regulate federal savings associations." (*Akopyan,* at p. 138.)[7]

The OTS in 1996 adopted 12 Code of Federal Regulations part 560.2, in which, at paragraph (a), the OTS made clear it "occupie[d] the entire field of lending regulation for federal savings associations." (61 Fed.Reg. 50951–50952, 50965–50966 (Sept. 30, 1996); 12 C.F.R. § 560.2(a).)  "Federal savings association" under HOLA includes a federally chartered savings bank. (12 U.S.C. § 1462(3) ["[t]he term 'Federal savings association' means a

_____

7    As also explained in *Akopyan*, "[t]o allow federal thrifts 'greater flexibility in their lending and investment operations,' the OTS . . . directed the thrifts to comply with the uniform interagency real estate lending standards set forth at 12 Code of Federal Regulations parts 560.100 and 560.101," which "required that a savings association 'establish loan administration procedures for its real estate portfolio,' addressing such matters as . . . payment processing; . . . loan payoffs; . . . and servicing and participation agreements. (Appen. to 12 C.F.R. § 560.101.)  The reference to servicing agreements, a feature of third party loan servicing arrangements, suggests that such arrangements fell within the scope of the interagency real estate lending standards that federal thrifts were directed to follow." (*Akopyan, supra*, 215 Cal.App.4th at p. 140, fn. omitted.)

14

Federal savings association or a Federal savings bank chartered under section 5 of this Act [12 USCS § 1464]"]; see *Appling v. Wachovia Mortg., FSB* (N.D.Cal. 2010) 745 F.Supp.2d 961, 970–971 ["Federal savings associations, including federal savings banks, are subject to HOLA and regulated by the Office of Thrift Supervision"].)  In keeping with its "inten[t] to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation," the OTS allowed federal savings associations to "extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities," subject to certain exceptions. (12 C.F.R. § 560.2(a).)  In paragraph (b), the OTS provided a non-exhaustive list of examples illustrating "the types of state laws preempted by paragraph (a)," such as, at subparagraph (9), "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in . . . billing statements . . . or other credit-related documents" and, at subparagraph (10), "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."  (12 C.F.R. § 560.2(b)(9) & (10).)  "Paragraph (c) saved from preemption certain state laws, such as contract law, 'to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a).' "  (*Akopyan, supra*, 215 Cal.App.4th at p. 139; see 12 C.F.R. § 560.2(c).)[8]

_____

[8]  The Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd–Frank Act) (Pub.L. No. 111–203 (July 21, 2010) 124 Stat. 1376) became effective July 21, 2011.  Following "enactment of the Dodd–Frank Act . . . , the OTS was merged into the Office of the Comptroller of the Currency (OCC), which regulates national banks under the NBA [National Bank Act]."  (*Akopyan, supra*, 215 Cal.App.4th at p. 139, fn. 10.)  For purposes of the discussion relevant to the timing of events at issue here, we

The OTS supplied the following guidance on how to construe its regulation: "In this regard, OTS wishes to make clear that the purpose of paragraph (c) is to preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations. When analyzing the status of state laws under [12 C.F.R.] § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption." (61 Fed.Reg. 50951, 50966–50967 (Sept. 30, 1996); see *McShannock, supra*, 976 F.3d at p. 890; *Silvas v. E\*Trade Mortg. Corp.* (9th Cir. 2008) 514 F.3d 1001, 1005.) "In applying this framework, we are 'not limited to assessing whether the state law on its face comes within paragraph (b) of the regulation.' [Citation.] 'Instead, we ask

---

refer to the agency as OTS. In August 2011, OCC issued an Interim Final Rule superseding 12 Code of Federal Regulations part 560.2. That rule, however, does not apply retroactively (see *Davis v. World Savings Bank, FSB* (D.D.C. 2011) 806 F.Supp.2d 159, 166, fn. 5) and only applies to contracts entered on or after Dodd-Frank's effective date in July 2010. (*Tamburri v. Suntrust Mortg., Inc.* (N.D. Cal. 2012) 875 F.Supp.2d 1009, 1020.) The Loan was executed in June 2006. Therefore, 12 Code of Federal Regulations part 560.2 applies here. (See 12 U.S.C. § 5553; *McShannock v. JPMorgan Chase Bank NA* (9th Circ. 2020) 976 F.3d 881, 885, fn. 3 (*McShannock*).)

16

whether the state law, "as applied, is a type of state law contemplated in the list under paragraph (b) . . . . If it is, the preemption analysis ends." ' " (*McShannock,* at p. 890.)

Here, it is undisputed that IndyMac originated the Loan, and Indymac is a federal savings association. Yet, whether a federal savings association originated a loan is not always determinative of HOLA preemption. In California, courts have adopted three distinct positions on preemption as it relates to loan origination. The first, and majority view, holds that HOLA preemption applies to all conduct related to a loan originated by federal savings associations. (See, e.g., *Akopyan, supra*, 215 Cal.App.4th at p. 138; *Ramirez v. Wells Fargo Bank, N.A.* (C.D. Cal., Feb. 2, 2016, No. CV 15-08909-BRO(JPRx)) 2016 U.S.Dist. Lexis 194396, at p. *12; *Caovilla v. Wells Fargo Bank, N.A.* (N.D. Cal., May 16, 2013, No. 13-cv-1003 JSC) 2013 U.S.Dist. Lexis 70143, at p. *16; *DeLeon v. Wells Fargo Bank, N.A.* (N.D. Cal. 2010) 729 F.Supp.2d 1119, 1125–1126.) The second position is that HOLA preemption does not apply to claims against a national bank successor to a federal savings association, regardless of when the claims arose. (See, e.g., *Roque v. Wells Fargo Bank N.A.* (C.D. Cal., Feb. 3, 2014, No. 2:14-cv-00040-ODW(SSx)) 2014 U.S.Dist Lexis 32935, at pp. *10–*13; *Albizo v. Wachovia Mortg.* (E.D. Cal., Apr. 20, 2012, No. 2:11-cv-02991 KJN)) 2012 U.S.Dist. Lexis 55985, at pp. *53–*55; *Gerber v. Wells Fargo Bank, N.A.* (D. Ariz., Feb. 9, 2012, No. CV 11-01083-PHX-NVW) 2012 U.S.Dist. Lexis 15860, at pp. *7–*9.) The third position is that HOLA preemption applies to loans transferred to a successor of a federal savings association but only for claims arising from conduct by the federal savings association. HOLA preemption does not apply if a claim arises based on conduct by a successor national

17

bank.  (See e.g., *Calimpusan v. Wells Fargo Bank, N.A.* (C.D. Cal., Jan. 26, 2016, No. CV 15-08452-AB(KSx)) 2016 U.S.Dist Lexis 190605, at pp. *11–*12; *Leghorn v. Wells Fargo Bank, N.A.* (N.D Cal. 2013) 950 F.Supp.2d 1093, 1107–1108; *Rhue v. Wells Fargo Home Mortgage, Inc.* (C.D. Cal., Nov. 27, 2012, No. CV 12-05394 DMG(VBKx)) 2012 U.S.Dist. Lexis 188384, at pp. *3–*6; *Valtierra v. Wells Fargo Bank, N.A.* (E.D. Cal., Feb. 10, 2011, No. CIV-F-10-0849 AWI GSA) 2011 U.S.Dist. Lexis 18669, at pp. *8–*11.)

Here, Bush faults the superior court for following the majority position while noting that, had the court followed either of the two latter approaches, it would not have found HBOR preempted.  However, Bush provides no analysis why the latter two approaches are more appropriate.  Indeed, Bush does not explain what entity currently owns the Loan and how that should impact the analysis.  Further, it is not clear on the record that current ownership of the Loan was ever established below.  And Bush does not point us to any evidence in the record establishing such ownership.  Given these shortcomings, we find Bush just mentioning three different approaches courts in California have taken toward HOLA preemption to be an ineffective and unhelpful appellate argument.

In addition, Bush insists that HOLA should not preempt her second cause of action because her claims regarding PHH's "handling of her loan modification application clearly were only incidental to [PHH's] lending practices."  Yet, on the record before us, PHH appears only to be a servicer not a lender.  Thus, Bush's conclusory argument here misses the mark.

More importantly, Bush glosses over the key issue in the preemption argument in the instant matter.  Bush claims that PHH violated Civil Code section 2924, subdivision (a)(6) by moving forward with a foreclosure sale while considering her for a loan modification.  Thus, the issue here is

18

whether HOLA preempts HBOR, specifically Civil Code section 2924, subdivision (a)(6). Bush provides no analysis of this issue.

In short, as part of its summary judgment motion below, PHH argued that Bush's claim for wrongful foreclosure in violation of HBOR was preempted by HOLA. Bush did not address that argument whatsoever. On appeal, Bush asks us to exercise our discretion to consider her legal argument that HOLA preemption should not apply. However, her briefing of the issue is not instructive. She provides little, if any, analysis of the salient issues. She does not adequately discuss the governing law. She does not even address the very state statute that she alleges PHH violated. And she has not shown this court where ownership of the Loan was established below. We therefore will not exercise our discretion to consider the HOLA preemption issue Bush first argues on appeal and ignored below. We are hesitant to wade into this complex issue when dealing with an incomplete record and superficial briefing. Thus, we determine that Bush has not satisfied her burden to show that the superior court erred in finding that HOLA preempted her second cause of action.[9]

---

[9] Like her first cause of action, Bush argues that if we conclude HOLA preemption does not apply, her declaration filed in opposition to the motion for summary judgment establishes the existence of a triable issue of material fact as to the second cause of action. She provides no explanation or further analysis. For the reasons stated *ante*, we find this argument improper and unhelpful. (See *United Grand, supra*, 36 Cal.App.5th at p. 153.) We thus summarily reject it.

DISPOSITION

The judgment is affirmed. PHH is entitled to its costs on appeal.


McCONNELL, P. J.

WE CONCUR:


IRION, J.


RUBIN, J.